Well, I hope none of you are hungry because the whole piece smells like bacon. I'm going to have our earlier panel have breakfast. Emily Eisner Thank you, Your Honors. Good morning, Your Honors. I'm Emily Eisner representing Ian Fretch and his family. And Mr. Fretch are here in court today. May it please the Court. The first issue is the insufficiency of the state's case due to the fact that there is no crime when you are a person who is in your own doorway of your own house and have no criminal knowledge of anyone being around. Now, first of all, under the exploitation statute, there has to be actual presence, which we don't have here because my client did not occupy the same place with anyone else, much less the complaining witness, because he did not enter her statutory presence. The statute reads, and I'll say it two ways, it does not read with knowledge that a child would view his acts. It reads in the presence of a child and with knowledge. It doesn't say, if you use the term actual presence, you've included that. Yes, that's correct. It says presence, but the definition of presence is that an act or fact or state of being in a certain place and not elsewhere and near enough to the very spot. I know you cited a number of cases on that point, but the Illinois Supreme Court has found that, for example, robbery, a person in the upstairs bedroom can be present within the robbery statute for taking that takes place on the first floor. The point is presence depends upon the nature of the conduct and the offense that's at issue, correct? Absolutely, absolutely. But the difference there is that, for example, robbery in the vehicular hijacking statute, the reason those kinds of things are taken into account and you can be in the next room is because you're trying to distinguish it from just theft. So that's why that happens. And the trial court here made specific credibility findings regarding the victim, correct? He made credibility regarding the victim, the complaining witness, but he did not make any findings on presence and presence was just completely lost sight of. The victim testified that the defendant made eye contact with her, called her attention, correct? She testified to certain perceptions, but there's two things going on there. The point is that the evidence is in the record that the defendant called her attention, masturbated, opened the door while masturbating, correct? She testified to that, but what she didn't testify to or what she testified to was where she was. So there's two things. How close would she have to be to him for him to be the, your understanding, the presence? Yes, that's right. She has to be in either arm's length, because that's the definition of presence. Where? What definition? The definition of presence is for those cases such as this that doesn't have a statutory definition, we use the ordinary meaning of presence. And that has to be, and that is, and Black's Law Dictionary, because it's a law dictionary, is the best one to use. And there are reasons for that.  I'm sorry. Occupation of the same space, and space when you're outside is kind of an interesting concept. But where is arm's length? Arm's length is also in, it says at hand. So arm's length is also in the Black's Law Dictionary. Well, at hand can mean a lot of things, not literally. Well, you know, it's like one person's here and then one person is over there. And in this case, she was across the street. She was, oh, she was across a recessed porch, yard, sidewalk, street, more grass in the second sidewalk. But within view. Not, and, and she was not in view, because that is a physical, that is a physical impossibility. But if the door opened and that was her testimony, she did view. What she viewed or tried to view cannot be bootstrapped as to what he was perceiving in his own house, in the shelter of his own house, house, excuse me, and his porch, which was small and secluded. And the porch is sheltered. There's an awning. There's railings. There's foliage. There's six steps going down. There's a step going up to his house. So it is his house. So it doesn't matter whether the door is open or closed. And during all of her testimony until the fourth excursion when she was pacing to come back, all the testimony was he was in his house. So when we get to the fourth excursion, when he, in the light most favorable to the state, opens that door, it's his home. It's his own home. And she's across the street. You're not arguing that he has a right to do anything with his front door open that he chooses to do, are you? Yes, I am. And the reason why, yes, because it's perfectly legal because unless and until he becomes in the ambit of the statute, there is nothing wrong with what he did. Can you just, we're limited in time. Sure. There's several issues that you raised. Sure. Can you comment on the alleged error by the court in allowing the other crimes evidence, the other acts evidence? Sure, sure. There was two. There was a library incident from five years ago, a flirtation in the library, and it came in and showed his propensity. It came in to show he was a bad person. It came in to show that he was a sexual pervert. It also showed that the girl was of about the same age as our victim here, 14. This is an issue about intent or motive or lack of mistake. Well, actually, on the age issue, there's a Hansen case that says that any kind of sexual proclivity toward minors is so prejudicial that the mere fact that there's some kind of sexual connection cannot be bootstrapped into propensity. There wasn't anything specifically sexual. It was just his interest in a 14-year-old girl. Right, but the interest in the 14-year-old girl is supposed to be his attractiveness. And what does that mean? That's bad character. That's why it's coming in to show that he is interested in this. And that is completely the reason why it can't come in. And the other incident was the same. The other incident was the same. Would you agree the standard review is abuse of discretion, correct? Correct. And the trial court found that his intent was at issue. Well, his intent is not at issue, and that's the Bobo case that I cited. The trial court found his intent was at issue. Yes, the property, absolutely. Bobo was distinguishable on its facts from this case. The defendant here gave a statement where he admits masturbating, correct? Correct. Admits being naked in the home. Correct. At the front door. Correct. But the question becomes, I'm sorry. His explanation to the police was that that behavior was innocent, that he didn't know she was there. He admits that he was touching the general area because he itched at that time, but also admitted that he was masturbating while inside. So isn't intent or lack of innocent frame of mind at issue when he admits to being present, admits to doing these things, but says he did so for innocent reasons, not to arouse the victim? No, because the difference is knowledge and intent, and those are two different elements. And intent is inherent in a masturbatory act. There's no question about that. But that's not a crime. The crime becomes if he's viewed, he has to know that someone is viewing him, and he has to know that a minor is viewing him. And he doesn't. There is no evidence whatsoever in this record that he would know and expect that anyone would be seeing and viewing his conduct in his own doorway, on his own secluded porch. The testimony was that the victim, her attention was called by the defendant to her. In the insurmountable distance, there is no feasible way that he could ever, that she could ever see those kinds of things. So is it your position that other acts showing a sexual interest in underage girls is not relevant to the question of whether or not his exposure of his penis on July 19th was intentional or not accidental? Because intent was not an issue in the case. The intent is assumed. I mean, if he did those things. What are you talking about? Intent is assumed. It's intense and verbal. If you do those things, the intent to arouse yourself is presumed. So the issue isn't intent. Well, if you're going to arouse yourself, the offense can be committed by either intent to arouse yourself or the other person. The issue is that you have to knowingly do that or perform that act in the presence of another, in the presence of the child, correct? Correct. And both of those elements are absent. There's no presence and there's no knowledge. And the State's entire case is to bootstrap perceptions from someone across this expansive distance and use that to say that my client knew that he would be viewed and no one would think that in the privacy of their own home that someone would be lurking and peering from 80 feet away when you can't see. And maybe that's an answer to your question about calling attention to himself. Counsel, I can't make any credibility determinations at this point in this case. I have to rely on those determinations of the trial court. The trial court said, believed that the girl was called or someone said, hey, and that drew her attention to that secluded, overhung, awninged porch. Why would, if it is so secluded and so covered and so railings, why would someone say, hey, and open the door while they are naked? Well, the first thing is the reason why it's not a credibility issue is because at that distance and that kind of syllable is contrary to human experience. Anyone could hear that. He did not call. Where is your authority for that? It's what I would say is common sense. No, I have to rely on a record. The record is those things, and it's not substituting your judgment for anyone because when something is contrary to human experience, that anyone could perceive those kinds and make connections, it's fanciful, and fanciful testimony cannot be accepted. How is this child's testimony fanciful in light of what happened earlier that day or two days, three days earlier? Well, what happened two days earlier does not have any bearing on what would happen two days later because it was yet another attempt to get her attention in some fashion. The Jeep incident was such a completely different modus operandi so that on Thursday and Saturday, what happened on Saturday, he had no way of knowing that she was going to come back. She lived on the same block. How did he know? I mean, that's not reasonable to believe either that she wouldn't come back. That's where she lived. Where was she going to go? If that were the standard of what presence and knowledge is, no one would ever be able to take a bath. No one would ever be able to step outside. I don't know about your house, but my bathtub is not my front porch. But the porch, every case is decided on its facts, and in this case, this porch is not, he was never out in public. This is not a public porch. This is not his lawn. This is, and it is private. Well, you're not making a constitutional privacy argument that a person's entitled to masturbate. I am not making a constitutional argument, but what I am saying, Your Honor. The photographs, let's talk about the photograph that you took issue with. The photograph is grainy, would you agree? I'm sorry? The photograph that's in the record that the child took is grainy. Correct. But you can clearly see a figure, and the defendant acknowledged that that was him. Correct. And it does appear to, like he told the police, he was naked, at least it appears in the photograph. It's flesh tone. Correct. So, but it doesn't show, that portion does not show his penis. Correct. Because it's blocked off. Right. But it does, so how can you say that doesn't corroborate the victim's testimony? The photograph shows that she could have seen what she testified. It doesn't matter what she could see is what I'm saying. Okay. Yeah, it really doesn't matter. So it doesn't matter what she could see. It doesn't matter because that is not, it doesn't matter. It doesn't matter. I mean, there's hot tubs. I'm sorry. I understand your argument. Yes. Public trial, can you comment on the denial of the right to a public trial? Correct. And the defendant not making a personal waiver. This was the most flagrant violation there possibly could be. To deny the families, the living families, out of the courtroom. And then to have this skewed, perverse procedure that allowed the families of the two, of the complaining witness and her friend. And there was no possible reason to do that. And the court. They said they were juveniles. They were juveniles. They were juveniles. But under the Waller case, it's not enough. That alone is not enough. There has to be something specific about emotional needs. And to agree to that, especially when they were not 9 or 10, and these were not unsophisticated people. That what it did was it denied all of the protections that a public trial defendant had were lost. And then the danger, which is the presumed prejudice, that a 14-year-old would be influenced by authority figures. And when this whole case is about families, and the family that had the biggest interest in the case was excluded. And that did deny his right to care. Did they ask to stay? Was there any request by them to stay? It was presumed because they came to every. No, no, no. Did they ask to stay when the court, when counsel agreed to just let the parents of the minor stay? No, no. And so how can this be so flagrant if counsel or even your own client didn't say, wait, wait, my parents have to be here? Because that's why it's in the context of ineffectiveness. This is the counsel and the sui spani duty on the court. Because the child attorney agreed to this. Well, there's also a strong presumption that the attorney is effective. That's correct. And that he's consulted with his client. That's correct. Discussed with his client the waivers. And would you also agree that this right is not one of the five decisions that the Supreme Court has identified as ultimately belonging to the defendant? I'm talking about the Illinois Supreme Court. It's what I cited was Walton. Walton is a federal court. Yes. It's persuasive only. Correct. And my position is the same rationale. It's not one of the five, but it's the same rationale that it's a higher standard of knowing intelligent waivers. So the same reason would be. I have one more question. Sure. You raise in your brief and the post-trial motion an argument that counsel was ineffective for failure to present the alibi. Correct. However, there's no affidavit and no testimony that this information was ever even conveyed to defense counsel. Isn't that your obligation to show that defense counsel was aware of it? That was, and I believe that was part of the ineffective assistance of counsel. Where in the record did you demonstrate that counsel was even aware of the defense potential alibi? It's the ineffective assistance of counsel that he didn't investigate. Well, wait. Correct. There's nothing in the record that suggests that he ever asked the defendant. That's correct. And the answer to that is that he should have known because the stakes are so high. He should have known that when his client and my client today was going by his general Thursday schedule and when a business record would have pinpointed it. And so it was his duty to ask his client. Would you agree, and the United States Supreme Court said this, and the Illinois Supreme Court has said it, People v. Thomas, that in making decisions, trial decisions, attorneys rely upon information provided to them by their clients. Absolutely, absolutely. And so why in this case, and I apologize if I'm repeating myself, but that he relied, it was this Thursday general schedule, and he just missed it, and it's blatant, and it was important. Because it eliminates this Jeep incident, and then all we're left with is this library incident, a flirtation in a library, which is very prominent in the court's ruling. I mean, he was so fixated on those two other incidents. And if I have any time left, I would like to address Thomas. You'll have time in response, but your time is over at this time. Okay, thank you. Good morning, Your Honors. Counsel, may it please the Court. Defendant was guilty of sexual exploitation of a child in this case and disorderly conduct.   He was stripping. He was masturbating. He came to the door and thrust his penis out. He stepped outside. The judgment credibility determination is based on this. And he found the victim and her friend extremely credible. Counsel believes that this child, the victim, was not in the presence of the defendant, and this is a place that was his and he could do as he wished. Without making a specific constitutional argument, she's simply saying the child wasn't present. How do we respond to that? Presence can't ever be a bright-line rule, of course. You could have two, a defendant and a victim, who are in a large room, a gymnasium, and maybe they're not in the presence of each other. But here we have presence. They were interacting with each other. They could clearly see each other. Defendant was calling out to her. He was motioning to her. He was waving her in. We can't say that when they're close enough to interact that that's not presence, that outside can't be presence. So you're saying the guideline is interaction as opposed to, as counsel explained, arm's length, based on the Black Law Dictionary, the definition that she referred to? And on the facts of this case, obviously they were unlikely to be in arm's length of each other, but they were interacting together. He came outside of his house, and she was across the street. There's no requirement that they be within arm's length of each other. Clearly, where they're interacting with each other, that has to be enough to be in the presence. They could see each other. They could hear each other. They could interact. And the judge found that testimony credible. There isn't any evidence to support that this was just a guttural sound that he made or he was just not knowing that she was there. And not knowing that she's there isn't the standard. It's whether he was doing this for his or her sexual gratification. And he knew she was there. He knew that there were other people around. He testified. He knew there was a garage sale going on. It's the middle of the day. Why did the state need to offer evidence of other crimes if the testimony was so clear that he knew she was there? I mean, the incident in the library four years earlier, it's four years earlier, and it has no real similarity other than the age of the child that he's conversing with. True, but there was an argument that intent was in question in this case and that he made a mistake. But intent in his knowledge of the child. I mean, he lives in the neighborhood. Two days earlier, he blows her a kiss. He looks at her. Wasn't that incident enough to show the relationship that he had an interest, besides poisoning the record with some chat in the library four years earlier? True. There's an argument to be made on that point. But in this case, we have a child judge. If that was there, is it harmless beyond a reasonable doubt? Correct, Your Honor. Your argument is barely one page on other crimes evidence. You say a seaside to Wilson. Tell us about how does Wilson support your argument? In Wilson, unless you think we're delineating the types of cases where intent may come into play, how does intent come into play according to Wilson in this case? I'm sorry, Your Honor, it's taking me a minute to find it. I'm not getting to it. In this case, we weren't trying to show propensity. We were trying to show the intent. And because it was a bench trial, not a jury trial, and we can presume that the judge understands the law, and he did. He stated on the record, I'm considering this for intent. It's not for propensity. He considered it for a limited purpose. He said that on the record. And he didn't – there wasn't any evidence that he considered that evidence for propensity. He was very clear on the record. He made a clear finding. And intent was at issue in this case. Defendant was arguing again. I didn't know there was a girl out there. I didn't know she could see me. And that's knowledge, not intent, isn't it? Correct, Your Honor. But the trial court made its ruling pre-trial. He didn't wait to see what the defense was going to be. He basically put the defense in a box because he made his ruling pre-trial without hearing what the potential defense was, didn't he? Shouldn't he have waited? Wouldn't it be a better practice to wait to see what the defense argument is before you put the defendant in a position that he has to defend not just a crime charge but this other offense? But this testimony was going to come in before the defendant came to testify, if he was going to testify. Why would it have come in before he testified? Because it came in as a part of the state's case. Well, that's because the trial court ruled prior to trial that it should come in. Isn't this the type of evidence that should come in only in rebuttal, depending upon what the defendant says? But there were arguments about all of this in the pre-trial time, and the state was aware that he was going to argue that this was an accident, basically. And that was from his videotape statement. Correct. Or video. I shouldn't say tape anymore. There's no tape. It's an electronically recorded statement. Correct. In fact, I tend to say tape to record all those old EHS kind of terms. When did the jury waiver come with reference to this motion in limine? I believe that it was before. So now then we know that, in fact, although there has been discovery and the court has heard argument, we know that just a trial court is going to hear this. We're not going to have this out before a jury. Correct. So wouldn't it have made more sense for the judge to wait on that? The motion could be presented, but why did he make such a broad ruling allowing it in when we don't know exactly what the defendant's going to say, if he's going to say anything? That's true. He could have waited, and maybe that would have been better practice, but he didn't. And he said he was going to take it only for a very limited purpose. And so even if there was error in that, it would have been a harmless error. And then the final claim of defendant is that his sentence is improper. It's clear under the statute that the legislature uses the terms term and period of probation and imprisonment interchangeably. And there isn't any authority for the argument that a court would be limited in its sentence to only a year if the court was sentencing to imprisonment and probation. And yet if a sentence of imprisonment was a condition of probation, they would be limited to six months' imprisonment and have two years of probation. Probation was the rehabilitative part of this sentence, and that's what the judge was concerned about. And as a public policy, we shouldn't want to cut off that time period, that rehabilitation that the judge was looking for. Well, he could have just used the probationary period as opposed to the incarceration period. That's true, but he was giving credit for the jail period, so defendant wasn't going to serve the jail. Well, ultimately he gave credit for it. He did. Well, it didn't exactly start out that way, but he ultimately did. He did, and he shortened his sentence as well. So defendant got the benefit of a shorter prison term and the longer rehabilitative period. Did the general assembly make clear what the maximum term is for misdemeanor? They do. They start out in Section 730 ILCS 5-5-4.5-55, where they set out the maximum term for imprisonment is a year. The maximum term for probation is two years. Correct. And in subsection F of Section 562F, the court may impose a term for probation that is concurrent or consecutive to the term of imprisonment so long as the maximum term imposed does not exceed the maximum term provided under Article 4.5 blah, blah, blah. So your argument is that the maximum consecutive term fits within those parameters, that you can get two years and a year because they both, in aggregate, do not exceed the maximum. Correct, Your Honor. And the judge shortened that time. He started out with a year of imprisonment, and he shortened it, considering the next section of the statute, that's Section 5.3, that allows only for six months when it's a condition of probation. But in this case, it didn't appear to be a condition of probation. It was set out as two separate sentences, and the conditions of probation were clearly set out. If there's nothing further, we'd ask this Court to affirm this. I have another question. What about the right to a public trial? The defendant agreed to that in this case. This isn't a case like Ravello where we have objections. Well, you're saying that their argument is that the counsel was ineffective for agreeing to that. Correct. So, first of all, it's a slight change in argument. We're looking at ineffectiveness, and typically that's something that could be outside of the record because, as you discussed, counsel and his client are probably going to discuss this off the record. And so we're in a situation where we don't have on the record any indication that the defendant wanted people to be in the trial. We don't know who was in the courtroom, if they were going to be witnesses. There's no affidavit from the defendant in his post-trial motion alleging that he told his attorney, I want a public trial. Absolutely. No, there's no affidavit from the counsel that he did, but I said you'd look more sympathetic to the judge if you agreed to this. We just don't have that kind of record fleshed out yet. But the defendant still has an opportunity. Counsel in post-trial was also trial counsel, correct? Yes. Okay. Yes. So then we take the issue from the flat-out Sixth Amendment right into an ineffectiveness. And, in fact, did counsel for defendant say, yes, Your Honor, we agree to that? Absolutely. It wasn't that he just sat there when the state said we have the stipulation. He actually said, yes, we agree to that. And he actually raised it himself to the court. They clearly talked about this before. And when the judge signed the order, he had both counsel also sign the order. He tried to cover his bases as clearly as possible that this was an agreement and we should support that, right? If there's nothing further, we'd ask this court to affirm the judgment. Thank you. Thanks, counsel. Ms. Eisner? Thank you. I'm going to start with sentencing and go backwards. For sentencing, that you can get maximum jail time and you can get maximum probation, and you can't get both. And when the court is – How do we know that? I'm sorry. How do we try that? Where's the authority that says that? 2F. And when the court wants to combine probation and jail time, it's tapped by – and I'm reading from 2F – that it cannot exceed the maximum term for that offense. Actually, it refers back to 45. Correct. And 45 is, for class A misdemeanor, is 364 days. And it uses the word term. If jail time is a condition of probation, that might be the case. But we have two separate sentences here that seem to be allowed by this particular statutory authority. The jail term is separate and apart from the probation term. The probation period is separate and apart from the jail. That's correct. Either way, they're separate. Correct. They don't relate to each other. They relate to the offense. They relate to the offense. And the statutory scheme is that there's certain dispositions that you can receive. And it also sets forth that when they are combined, because you can get concurrent or you can get consecutive, that it's tapped by, and that's that phrase that I just read to you. So to answer to what the State said – That phrase that you're talking about in subsection F says concurrent or consecutive. That's correct. And consecutive would indicate that the terms that are set out in the statute can be served consecutively. And that's correct. And they're capped, for example. Why are they capped? They're capped because that's what the statute says. They're capped by the term. And the terms – Probation is two years and incarceration is 364. The probation is a period, and it says term. And it's strict. And that's why I did that. And the State is saying they're interchangeable. They're saying period, term. It's capped by 24. It's capped by 12. But it doesn't say that. And it's important that when you look at the statutory scheme and you see that when you get concurrent, it's going to be to the day release, participating in a day release program. And as a practical matter, that's the only way you're ever going to get concurrent jail time and probation. And every other one would be either or, or consecutive. And that is the plain language of the statute. And so when the State says, well, you didn't get above the maximum, the State is ignoring what the maximum is. And the maximum is 364 days. And so he got – he got – there was no room left to add in any probation after he had already received the maximum. But wasn't there – there was a maximum term for probation of two years. But that's not the cap. The cap is – the cap is 364 days. And that's – that's the reading of the statute. And it makes sense, actually, because if there was – if you had already served your maximum time, good time, and you served the whole thing, so there was no way it could be – the judge could clean it up by reducing the sentence because he'd already done the time, there would be no incentive to comply because you can't go back to jail. So a contempt of court would not serve that purpose? Well, we don't usually hope that that's going to happen. Correct. I think the State's statement that the probation was supposed to be a rehabilitative term as opposed to a punishment term therefore makes sense in this case. Correct. So – so that's why – that's why it makes no sense for him to get above the 364 days because he can't go back and it's just a continuation of a probation on probation. It gets told if there's a – if there's a revocation petition. And so it just puts him in this quandary, in this limbo, and it's completely – without – at the risk of repeating myself, that it's beyond the statutory cap, which is based on the word term. The Illinois Supreme Court, in reviewing People v. Horrell, I don't know if you're familiar with that case, H-O-R-R-E-L-L, the court mentioned in a footnote that this subsection F provides that a court may impose probation and imprisonment concurrently or consecutively so long as the maximum term does not exceed the statutory maximum. And I believe in that case he did not get 24 months probation consecutive to 364 days. But the Supreme Court's language, maximum or consecutive, so – So the question becomes, what is that cap? And it's fine, but what I'm saying – If he capped it at 364, and that's your argument, right? Yes. If you're going to get jailed, then he can't get any probation. That's fine. That's correct. And that's usually what happens. So your argument is that, at the very least, this term is ambiguous, and the rule of lenity should benefit the court. Well, the rule of lenity, of course, would benefit. My position is – You think it's clear. I think it's clear. But in the alternative, the rule of lenity would also operate. And if I have any time left – You said you wanted to go backwards. You have a few minutes to do that. Thank you. Harmless error on the – the state suggested or argued that there was harmless error on the collateral crimes issue. In a bench trial, the judge relied on it. He made it the focal point. He detailed every one of those acts. He also used it to resolve credibility issues, which is improper. And then the other thing in his finding, he never mentioned any of those other interactions that the state is saying are the equivalent of spatial proximity. He never mentioned those. So it's not harmless. It's prejudicial because that is the primary reason why he found my client guilty. On the matter of the public trial, my client's parents appeared in court – and this is on the record – every court date. And once the judge, with the imprimatur of a judge saying the courtroom is excluded, the parents do not – it is not incumbent upon the parents to raise their hand and protest. It's not the parents. It is the defense and his counsel. They didn't do that. And in fact, they affirmed the closure. Correct. And that's why it's ineffective assistance to counsel. And I do have one more point, if I still have time, about my client living in the neighborhood and the people living in the neighborhood. They could see that the state is saying that they could see him, that he's visible, and all the people in the neighborhood. No, that is not standard. In fact, that's one of the reasons why we have spatial presence as a reason, so that there isn't a potential victim of everyone in the neighborhood from their cars and their parked cars or moving vehicles from far away. How about a streaker in a football stadium? They're hundreds, sometimes a thousand feet away. They offend everybody in the stadium because people can see them. Because that – that – that – Those people who do things like that have an intent to disrupt the activities of the ballgame. That's a disorderly conduct, and that does not have a presence requirement. Okay. That does not have a presence requirement. It could be more than that, depending upon the circumstance. Pardon me? It could be more than that. It could be a sexual exploitation. You're saying, yes. Well, that that he may have described was a disorderly conduct, but it could be many different things. Well, there would – for sexual exploitation, it's not a – there has to be a minor who's identified. And in that case, if there's minors that are identified, then there probably would be in a football game, I would assume there would be minors there. That – that would be disorderly conduct because there is no presence requirement. So we need to look at that. It could be masturbating. It could be sexual exploitation as well, so. If – if – It depends on the context. In that situation, that probably would be. I would – I would agree in a football stadium because there's people sitting next to you and they're in the same location. If there are no further questions. That's fine. Thank you. We ask that the conviction be reversed, outright prorogation lifted, vacated, or a new trial. Thank you. Thank you, counsel, for your arguments this morning. We appreciate the effort and we will – regular decision in due course. Right now, we will stand in recess, attending our next case. Thank you.